# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 16-cv-60467-BLOOM/Valle

USA ENTERTAINMENT GROUP, INC.,
*et al.*,

       Plaintiffs,

v.

SHERIFF SCOTT ISRAEL, *et al.*,

       Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS
## SECOND AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon two Motions to Dismiss Plaintiffs' Second Amended Complaint filed by Defendants Captain Wayne Adkins and Sheriff Scott Israel, ECF No. [68], and by Defendants Commissioner Charlotte Burrie (the "Commissioner"), the City of Pompano Beach (the "City"), and Mayor Lamar Fisher (the "Mayor"), ECF No. [70] (together, the "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting materials, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motions are granted in part and denied in part**.**

### I.    Procedural Background

Plaintiffs commenced this action by filing their complaint on March 3, 2017, asserting claims for violations of their constitutional rights pursuant to 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq*. ("RICO"). *See* ECF No. [1]. Defendants filed motions to dismiss the complaint and after hearing, the Court granted the motions with leave to replead the Section 1983 claims. Plaintiffs filed an amended complaint on

May 12, 2017. ECF No. [42] ("Amended Complaint"). While the Amended Complaint was not compliant with the Federal Rules of Civil Procedure and the law governing pleadings in this District, after a second round of motion to dismiss briefings the Court found that Plaintiffs appeared to state a plausible claim for retaliation in violation of the First Amendment, violation of equal protection under the Fourteenth Amendment, and, to the extent not barred by the applicable statute of limitations, malicious prosecution on behalf of Frontera. ECF No. [65] at 15. The Court thus granted Plaintiffs one final opportunity to amend their complaint. *Id.*

Plaintiffs filed their Second Amended Complaint, ECF No. [66] ("SAC"), on July 31, 2017. The SAC alleges five separate counts: First Amendment Retaliation Against the City Defendants (Count I), First Amendment Retaliation Against Defendants Israel and Adkins (Count II), Deprivation of Equal Protection Against the City Defendants (Count III), Deprivation of Equal Protection Against Defendants Israel and Adkins (Count IV), and Malicious Prosecution Against Defendants Israel and Adkins (Count V). The City Defendants have moved to dismiss both counts against them, Counts I and III. ECF No. [70]. Defendants Israel and Adkins have moved to dismiss Counts II and V, ECF No. [68], and have answered Count IV, ECF No. [67].

## II.      Factual Background

According to the SAC, Plaintiff USA Entertainment Group operates Club Cinema, a nightclub and music venue in Pompano Beach, Florida. SAC ¶¶ 1, 9, 12. Club Cinema opened in 2006 with a capacity for 2,500 patrons. *Id.* ¶ 10. Prior to 2013, it hosted approximately forty concerts and shows per year. *Id.* ¶ 12. At some point in 2013, Commissioner Burrie, the Commissioner for District 2 on the City Commission of the City of Pompano Beach, told Plaintiff Frontera and managers of Club Cinema that "if Club Cinema wanted to continue in

business peacefully," it must donate a portion of Club Cinema's property to the city to be developed into a community center bearing Commissioner Burrie's name. *Id.* ¶¶ 8, 16. Club Cinema refused to do so. *Id.* ¶ 18, 121.

After this exchange with Commissioner Burrie, the SAC alleges that Defendants directed an escalating practice of excessive and unwarranted police activity targeted at Club Cinema from 2013 to 2016 that included the deployment of tactical, SWAT, K-9, and patrol units to the property in order to drive Club Cinema out of business. *See, e.g.*, *id.* ¶¶ 19–37. These practices were particularly severe when Club Cinema hosted events that drew primarily African-American patrons. *Id.* ¶¶ 104, 106; *see also* ¶¶ 28, 85, 131, 192. The SAC details eleven separate incidents where police officers engaged in the following conduct: threatening to make arrests if the Club did not shut down by 2:00 a.m. (*id.* ¶21); telling customers not to patronize Club Cinema because the "venue was going to be closed down" (*id.* ¶¶ 24–27, 30); selectively detaining, questioning, inspecting, and ticketing patrons (*id.* ¶ 100); and closing down Club Cinema mid-concert by walking on stage and instructing the performer to stop the concert (*id.* ¶ 34). The police presence included unmarked vehicles and plain-clothes officers, some of whom entered Club Cinema. *Id.* ¶ 89, 97–98. According to the SAC, an officer told representatives of Club Cinema that the "idea" behind the police activity was to reduce the number of patrons at Club Cinema. *Id.* ¶ 132.

Managers of Club Cinema contacted representatives at City Hall, the Mayor, and the Commissioner to request that the City cease the excessive police presence. *See, e.g.*, SAC ¶¶ 41–48. During one of these interactions, the Mayor allegedly admitted to being aware of, and directing, the actions of the Broward Sherriff's Office ("BSO") and Defendant Adkins, his longtime personal friend. *Id.* ¶ 45. The Mayor also informed the Club Cinema representatives

that the City was enforcing a 2:00 a.m. close for Club Cinema because the City "viewed Club Cinema in the same light as the adult entertainment establishments in the City." *Id.* ¶ 47.

During a separate interaction with Commissioner Burrie, Plaintiff Frontera told the Commissioner that he and managers of Club Cinema planned to support a different candidate for mayor than Mayor Fisher. *Id.* ¶¶ 52–53. In response, the Commissioner, apparently angry that Plaintiffs had both refused to donate land to the community center and to support the Mayor, told the managers and Frontera that the excessive policing would not stop until Club Cinema was out of business. *Id.*[1]

Despite Plaintiffs' requests that Defendants cease the excessive and unwarranted police activity against Club Cinema, the SAC alleges that the conduct continued as part of an official policy, custom, or practice to destroy Club Cinema's reputation, and ultimately to shut it down. *Id.* ¶¶ 55, 98–102. Plaintiffs allege that Defendants' actions constitute violations of Plaintiffs' rights under the First and Fourteenth Amendments and state a claim for malicious prosecution. *Id.* ¶¶ 117, 120–21, 127. Plaintiffs seek injunctive relief and monetary damages. *Id.* ¶¶ 48–49.

### III.  Legal Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining

---

[1] The SAC appears to additionally allege an alternative theory for Defendants' conduct: that the City was motivated to close Club Cinema in order to please certain voters and to convert the property into part of a Walmart development. *Id.* ¶¶ 47, 65–66; *see also* City Commission Meeting Minutes, March 8, 2016, ECF No. 66-8 at 6 ("[S]outh of Club Cinema, there is a discussion to locate a Walmart Grocery Store . . . However, there have been some delays in order to get some things cleaned up but they will be working on the south end . . . up to where the club is located. Currently the club remains but when they get to that point, there will be future negotiations with the club owners.").

that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations."). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). Through this lens, the Court addresses the instant Motions.

### A. **First Amendment Retaliation Claims**

"To state a [First Amendment] retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005); *see also Castle v. Appalachian Tech. College*, 631 F.3d 1194, 1197 (11th Cir. 2011) (To establish a First Amendment free speech retaliation claim, a plaintiff must show that "(1) her speech was constitutionally protected; (2) she suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech.")

#### a. **Against the City Defendants (Count I)**

In the SAC, Plaintiffs allege that the City Defendants retaliated against them in violation of their First Amendment rights based on three instances of protected speech: expressing support for a political candidate other than the Mayor, defending a nuisance lawsuit brought by the city, and refusing the Commissioner's demand that they donate a portion of land for her eponymous community center. *See, e.g.*, SAC ¶¶ 16, 42, 51, 63. This Court previously found that the allegations in the Amended Complaint appeared to state a claim for retaliation in violation of the First Amendment regarding Plaintiffs' expression of support for a political candidate other than the Mayor. ECF No. [65] at 12–13. With respect to the two other theories, both are protected by the First Amendment. *United States v. Siegelman*, 640 F.3d 1159, 1174 (11th Cir. 2011) (noting in an criminal bribery matter that "a campaign donation . . . is protected First Amendment activity"); *Abella v. Simon*, 522 F. App'x 872, 874 (11th Cir. 2013) (noting that the First

Amendment "affords the broadest protection to political expression, and protects the rights of speech and to petition for redress" (citing *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 346 and *United Mine Workers of Am. v. Ill. State Bar Ass'n,* 389 U.S. 217, 222 (1967)); *Slane v. City of Sanibel*, No. 2:15-CV-181-FTM-38CM, 2015 WL 4414111, at *7 (M.D. Fla. July 17, 2015)(citing *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 131 S. Ct. 2488, 180 L. Ed. 2d 408 (2011) ("The Supreme Court has long held that the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." (internal quotation marks omitted)); *see also* ECF No. [65] at 12–13.

According to Plaintiffs, in response to the protected speech the City Defendants retaliated by directing an official policy and practice of excessive and unwarranted police activity. SAC ¶ 67. When Frontera and Club Cinema management confronted both the Defendants regarding the police activity, the City Defendants allegedly admitted that they knew of and directed the activity and that the purpose of the police activity was to put Club Cinema out of business. *Id.* ¶¶ 43–48, 52–54. These allegations are sufficient to defeat the City Defendants' motion to dismiss the First Amendment Retaliation claims.

In their Motion, the City Defendants argue that the refusal to donate property to a community center named after an elected official is not expressive speech protected by the First Amendment because such conduct is not "intended to convey a particularized message . . . that would be understood by others." ECF No. [70] at 5 (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). But charitable donations in support of a political figure are unequivocally protected by the First Amendment. *See Sec'y of State of Md. v. Munson Co.,* 467 U.S. 947, 959 (1984) ("[C]haritable solicitations are so intertwined with speech that they are entitled the to the protections of the First Amendment"); *United States v. Siegelman*, 640 F.3d 1159, 1174 (11th

Cir. 2011) (noting in an criminal bribery matter that "a campaign donation . . . is protected First Amendment activity"); *Cosac Found., Inc. v. City of Pembroke Pines*, No. 12-62144-CV, 2013 WL 5345817, at *10 (S.D. Fla. Sept. 21, 2013) ("The Supreme Court has also made clear that the First Amendment protects the solicitation of charitable donations." (citing *Village of Shumberg v. Citizens for a Better Env't,* 444 U.S. 620, 632 (1980)).  It logically follows that an expression of lack of support by refusal to donate is similarly protected from retaliation.  *See Aiellos v. Zisa*, No. CIV.A. 09-3076, 2009 WL 3424190, at *4 (D.N.J. Oct. 20, 2009) (finding plaintiffs sufficiently plead a First Amendment retaliation claim based on police officers' refusal to donate to the political campaigns of fellow officers).

The City Defendants also argue that Plaintiffs fail to allege causation since the excessive police activity occurred both before and after Plaintiffs expressed their support for a mayoral candidate other than Mayor Fisher and defended the nuisance lawsuit against the City.  However, the City Defendants once again cite to no authority for this proposition (*see* ECF No. [65] at 12–13), and further admit that the excessive police activity occurred *after* Plaintiffs refused to donate to Commissioner Burrie's community center.  ECF No. [73] at 6.  Moreover, even if these arguments were convincing, causation is an issue of fact not suitable for disposition upon a motion to dismiss.  ECF No. [65] at 13 (citing *Skolweck v. Mayor & Councilmembers of Garden City, Ga.*, 2012 WL 5183201, at *6 (S.D. Ga. Oct. 18, 2012)).  Thus, the Court rejects these arguments.

### b.  Against Defendants Israel and Adkins (Count II)

Plaintiffs allege that Defendants Israel and Adkins retaliated against them in violation of their First Amendment rights by engaging in excessive and unwarranted policing at specific events, namely hip-hop and rap music concerts that drew a primarily African-American crowd.

SAC ¶¶ 104, 106. The SAC alleges that Defendants Israel and Adkins directed or participated in excessive and unwarranted policing of Club Cinema during these events to halt an in-progress performance and to force Club Cinema to cease hosting such events, efforts which were ultimately successful. SAC ¶¶ 85, 99–100, 110. Plaintiffs allege Defendants' content-based actions violate their First Amendment right to host hip-hop and rap concerts. SAC ¶ 107.

The parties disagree about whether these allegations sound in a First Amendment freedom of speech claim, as Plaintiffs have plead them, or freedom of association claim, as Defendants claim is the correct interpretation. Defendants argue that Plaintiffs have no right to expressive association based upon an association of club patrons and owners who prefer musical genres that draw a primarily African-American audience. That may be true. *See City of Dallas v. Stanglin*, 490 U.S. 19, 24–25 (1989). But here, Plaintiffs have plead a claim for content-based violation of freedom of speech by alleging that Defendants Israel and Adkins directed or engaged in excessive and unwarranted policing based on the content of the events hosted at Club Cinema (namely hip-hop and rap shows). *See* SAC ¶¶ 85, 104–05. While Defendants urge this Court to construe this claim as a right to associate claim, they cite no case law to support that construction on these allegations. The Court finds that, at the motion to dismiss stage, these allegations are sufficient to sustain a First Amendment retaliation claim.

**B. Equal Protection Claims Against the City on Behalf of Mr. Frontera (Count III)**

This Court has already found that Plaintiffs have stated an equal protection claim under a "class of one" theory. While Defendants Israel and Adkins have answered the equal protection claim, ECF No. [67], the City Defendants argue that Plaintiffs have failed to state an equal

protection claim on behalf of Plaintiff Frontera. ECF No. [70] ¶ 3.[2]

The Court agrees that Frontera's equal protection claim should be dismissed. As this Court has already found, to state a claim for violation of equal protection under a "class of one" theory, a Plaintiff must identify comparators in the pleading in order to show intentional, discriminatory treatment different from others similarly situated. See ECF No. [65] at 15 (citations omitted). A review of the SAC reveals that Plaintiffs have not alleged any comparators to Plaintiff Frontera, and Plaintiffs make no argument to the contrary. As such, the equal protection claim against the City Defendants on behalf of Frontera is dismissed.

### C. __Municipal and Supervisory Immunity (Counts I and III)__

The City Defendants move to dismiss both counts against them based on municipal and supervisory immunity. ECF No. [70] at 7–10. While the City of Pompano Beach cannot be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior* (*Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997) (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978))), the City may be held liable for the execution of an official government policy or custom, that is, acts "of the municipality." *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003); *Scala*, 116 F.3d at 1399. Contrary to the City Defendants' argument (ECF No. [70] at 8), "a 'municipal act' is not, however, limited to decisions made by the city's official legislative body or in written agreements. City policy also may be implicated by the acts of individual policymaking officials or by pervasive city custom." *Brown v. City. of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991) (reversing district court's dismissal of Section 1983 claims based on qualified immunity and lack of municipal liability). Thus, a municipal act may include a "longstanding and widespread practice" which is "deemed authorized by the

---

[2] The City Defendants further argue that the equal protection claims fail because there can be no municipal or supervisory liability for the City Defendants. ECF No. [70] at 9–10. The Court addresses this argument in Part III.C, *infra*.

policymaking officials because they must have known about it but failed to stop it." *Id.*; *see also Griffin v. City of OpaLocka*, 261 F.3d 1295, 1308 (11th Cir. 2001) ("[A] municipality's failure to correct [ ] constitutionally offensive actions of its employees can rise to the level of a custom or policy if the municipality tacitly authorizes these actions or displays deliberate indifference towards the misconduct.").

The City Defendants argue "Plaintiff's [sic] assertion that the City Defendants 'directed' Sheriff Israel to engage in unwarranted and excessive police activities at the Club Cinema property is unsupported by any factual statements." ECF No. [70] at 8. While the SAC is replete with conclusory statements regarding the City Defendants' "direction" of the BSO, Plaintiffs also allege specific conversations with City representatives, Mayor Fisher, and Commissioner Burrie which support the allegations that the City Defendants were aware of the excessive policing of Club Cinema and that they had at least some control over the continuation of that policy. *See, e.g.*, SAC ¶¶ 41–43, 45, 48, 52–53, 144–46, 148, 155–56. Plaintiffs further allege that the Mayor stated that the City had classified Club Cinema as an "adult entertainment establishment." *Id.* ¶¶ 47, 150, 177. Taken as true, these allegations are sufficient to at least plead an unofficial custom, if not official policy, directed by the City, Commissioner Burrie in her individual capacity, and Mayor Fisher in his individual capacity. Accordingly, dismissal based on municipal or supervisory immunity is denied.

However, the Court will dismiss Plaintiffs' claims against Commissioner Burrie and Mayor Fisher in their official capacities. The Eleventh Circuit has observed that "[b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City*

*of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Thus, where a plaintiff sues the municipality and individual officials of the municipality in their official capacity on the same grounds, a court may dismiss the suit against the individuals in their official capacity. *Cosac Found., Inc. v. City of Pembroke Pines*, No. 12-62144-CV, 2013 WL 5345817, at *6 (S.D. Fla. Sept. 21, 2013) (collecting cases). Since Plaintiffs have sued the City of Pompano Beach as well as Defendant Fisher in his official capacity and Defendant Burrie in her official capacity under the same facts, those claims against Defendant Burrie and Defendant Fisher in their official capacity are dismissed.

### D. **Malicious Prosecution**

To plead a claim for malicious prosecution under section 1983, a plaintiff must establish (1) the elements of the common law tort of malicious prosecution and (2) a violation of his fourth amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). Under Florida law, in order to state a claim for malicious prosecution, a plaintiff must allege that (1) an original judicial proceeding was commenced or continued against him; (2) the defendants involved were the legal cause of the proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in the plaintiff's favor; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the defendants; and (6) the plaintiff suffered damages as a result of the original proceeding. *Id.* (citing *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002).

Previously this Court held that Plaintiffs' allegations, to the extent they attempted to state a claim for malicious prosecution, "f[e]ll woefully short of alleging a plausible claim for malicious prosecution, as the only allegation with respect to any prosecution is that the charge for resisting arrest was later dismissed." ECF No. [65] at 11. The Court further noted that "without further information . . .[it was] unable to determine whether a viable claim exists." The SAC, however,

repeats the same allegations found in the Amended Complaint (SAC ¶ 227) and only adds conclusory allegations that "Frontera had done nothing illegal at the time this incident occurred," "the decision to arrest and prosecute Frontera was malicious," and that "there was no basis to arrest Frontera." SAC ¶¶ 228–29. These sparse and conclusory allegations, without more, again fail to state a claim for malicious prosecution. Thus, Frontera's claim for malicious prosecution is dismissed.

IV. **CONCLUSION**

Accordingly, the Motions, **ECF Nos. [68]** and **[70]**, are **GRANTED IN PART** and **DENIED IN PART**. Defendants shall file their Answers to the surviving counts no later than October 20, 2017.

**DONE AND ORDERED** in Miami, Florida, this 12th day of October, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record